**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Tyler J. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 17 CV 50090 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tyler J. (formerly known as Dennis K.) applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") in 2009, and he was awarded those benefits by an Administrative Law Judge ("ALJ") in June of 2010. His disability benefits were reviewed in November of 2014 and were continued. Then, in May of 2015, Plaintiff was notified that the Social Security Administration ("SSA") needed to redetermine Plaintiff's eligibility for benefits because there was reason to believe that fraud was involved in certain cases involving evidence the SSA received from four doctors. Because one of those four doctors, Dr. Frederic Huffnagle, provided evidence to the SSA in Plaintiff's case, his case was redetermined. In conducting such redetermination, the SSA disregarded any evidence from Dr. Huffnagle. In July of 2016, the ALJ concluded, after conducting a new hearing and disregarding all evidence by Dr. Huffnagle, that Plaintiff was ineligible for DIB and SSI as of the date of his original application, and his benefits were terminated. After exhausting all administrative remedies, Plaintiff sued in this Court. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

1

For the reasons set forth below, the Commissioner's decision denying Plaintiff's claims on redetermination is reversed, and this case is remanded.

## I. Background

In 2009, Plaintiff applied for DIB and SSI. Plaintiff alleged a disability beginning on January 14, 2009, due to degenerative disc disease, lower back problems, bipolar disorder, depression, and anxiety. R. 282, 286. During the initial proceedings on his application, Plaintiff was represented by a social security lawyer, Eric C. Conn. Mr. Conn submitted records prepared by Dr. Huffnagle in support of Plaintiff's claims.

On June 1, 2010, without conducting a hearing, ALJ David Daugherty found Plaintiff disabled as of January 14, 2009. R. 118–22. ALJ Daugherty determined that Plaintiff's sciatica and low back strain/sprain were severe impairments. R. 120. Relying solely on evidence submitted by Mr. Conn from Dr. Huffnagle, ALJ Daugherty found that Plaintiff was limited to less than sedentary work and issued a fully favorable decision. R. 120–21.

In October of 2013, the U.S. Senate Committee on Homeland Security and Governmental Affairs issued a report accusing Mr. Conn and ALJ Daugherty of committing fraud. United States Senate Committee on Homeland Security and Governmental Affairs, *How Some Legal, Medical, and Judicial Professionals Abused Social Security Disability Programs for the Country's Most Vulnerable: A Case Study of the Conn Law Firm* (Oct. 7, 2019) ("Report"), available at https://www.hsgac.senate.gov/imo/media/doc/Staff%20Report-Social%20Security%20Disability%20Programs-2013-10-072.pdf. As set forth in the Report, Mr. Conn conspired with ALJ Daugherty and four doctors, one of whom was Plaintiff's medical source, Dr. Huffnagle. *Id.* at 2, 58–75. The Report stated that the SSA had learned about this wrongdoing as early as 2006. *Id.* at 2. After hearing testimony and investigating, the U.S.

Senate Committee concluded that "inept agency oversight . . . enabled the misconduct to continue for years." *Id.* at 1.

By July of 2014, the SSA's Office of Inspector General ("OIG") had identified 1,787 current or former clients of Mr. Conn whose applications the OIG "had reason to believe, were tainted by fraud." *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 794 (6th Cir. 2018) (internal quotation marks omitted). Pursuant to the Social Security Act, the SSA is required to "immediately redetermine" a beneficiary's entitlement to disability benefits if, at any point after granting benefits, the SSA has "reason to believe that fraud or similar fault was involved in the application" for benefits. 42 U.S.C. § 405(u)(1)(A). Nonetheless, the OIG provided the 1,787 names to the SSA "with the understanding that SSA was not to take any adverse action against any individual on the list until further notice." *Hicks*, 909 F.3d at 794 (citation omitted).

On May 12, 2015, the OIG sent a referral letter to the SSA pursuant to Section 1129(a)(1) of the Social Security Act. Defendant's Motion to Dismiss, Attachment 2. The referral stated in part:

> …the Social Administration (SSA) Office of The Inspector General (OIG) previously provided you with information regarding 1,787 individuals. These individuals were formerly represented by attorney Eric C. Conn, or his firm, and OIG has reason to believe that fraud was involved in their applications for Social Security benefits. Specifically, in these cases, OIG had, and still has, reason to believe that Mr. Conn or his firm submitted pre-completed "template" Residual Functional Capacity forms purportedly from Bradley Adkins, PH.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O. dated between January 2007 and May 2011, in support of the individuals' application for benefits.

*Id.* The letter went on to state that the OIG was not aware of any objections to the SSA moving forward with administrative processing of the redeterminations of the 1,787 individuals previously identified and told the SSA "that it may proceed with its redetermination of the cases of the individuals on the previously transmitted list." *Id.*

Six days later, on May 18, 2015, the SSA sent a letter to Plaintiff. The letter stated, "This is about the Administrative Law Judge's decision dated June 1, 2010." R. 160. It went on to explain that the SSA must redetermine Plaintiff's eligibility for benefits because: 1) there was reason to believe fraud was involved in certain cases involving Dr. Huffnagle (and three other doctors); 2) Dr. Huffnagle provided evidence in Plaintiff's case; and 3) the ALJ previously used that evidence to find Plaintiff disabled. The letter informed Plaintiff that during the redetermination process the SSA "must disregard any evidence from one of the medical providers above when the information was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office." R. 160. Finally, the letter stated that SSA had looked at Plaintiff's case again to see if the decision was supported after disregarding the evidence signed by Dr. Huffnagle and had concluded that the remaining evidence in Plaintiff's file did not support a favorable benefits determination. R. 161. As such, the SSA planned to send the case back to an ALJ for more action and a new decision. Plaintiff was informed that he could submit more evidence to the ALJ so long as it was "new and material" and concerned Plaintiff's "disability" starting on or before June 1, 2010. R. 162.

The SSA held a new hearing on Plaintiff's case, and ALJ John Dowling issued his decision on July 7, 2016. ALJ Dowling disregarded the April 27, 2010 medical report submitted by Dr. Huffnagle. R. 31. This included Dr. Huffnagle's report of Plaintiff's medical examination as well as his functional capacity findings. ALJ Dowling concluded that "there was insufficient evidence to support a finding of disability as of June 1, 2010. Therefore, the beneficiary's benefits are terminated, and SSA may treat any benefits previously received as overpayment." R. 41.

After exhausting his administrative remedies, Plaintiff filed an eight-count complaint in this Court. Plaintiff's Complaint alleges that the SSA's procedures and actions violated the Due Process Clause of the Fifth Amendment (Count I), the Social Security Act (Counts III, V and VI) the Administrative Procedures Act (Count II, IV and VII) and that the SSA's decision is not supported by substantial evidence (Count VIII).

The Commissioner filed a motion to dismiss Counts I through VII of Plaintiff's Complaint for failure to state a claim. Plaintiff filed a motion for summary judgment on the due process, Administrative Procedures Act ("APA"), and Social Security Act claims. Specifically, Plaintiff asked that the Commissioner's redetermination decision terminating benefits be outright reversed, and that this Court reinstate his benefits without the need for a remand. Plaintiff's Motion at 1, 20. Thereafter, the Commissioner filed the administrative record. Plaintiff supplemented his briefing by pointing to portions of the administrative record to further support his motion for summary judgment on the due process claim and also moved for summary judgment on his claim that ALJ Dowling's decision was not supported by substantial evidence.

After the issues were fully briefed, but before the motions were ruled upon, the Sixth Circuit issued an opinion in *Hicks v. Commission of Social Security*, 909 F.3d 786 (6th Cir. 2018). In *Hicks*, the Sixth Circuit was faced with essentially the same issues as are presented before this Court. The *Hicks* court ruled that the SSA's refusal to grant the plaintiffs an opportunity to rebut the OIG's assertion of fraud as to the Conn-related medical reports violated the plaintiffs' rights to procedural due process and violated the APA. *Hicks*, 909 F.3d at 804. Because of the ensuing decision rendered in *Hicks*, both parties in the present case were ordered to file a supplemental brief addressing that decision.

*Hicks* is the first of several cases around the country dealing with the Conn-related fraud to reach a court of appeals.[1] The Seventh Circuit has directed district courts to "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever [they] can." *Colby v. J.C. Penney Co*., 811 F.2d 1119, 1123 (7th Cir. 1987). A district court may not defer mechanically to other circuits, however, or abdicate its duty to independently decide a legal question. *Id.* A posture somewhere in between some deference and complete deference is proper when cases in different circuits challenge the same practice of the same defendant, particularly if different outcomes would place the defendant under inconsistent obligations. *Id.* at 1124; *Wilkins v. Just Energy Grp, Inc.*, No. 13-CV-5806, 2019 U.S. Dist. LEXIS 47486, at *11 (N.D. Ill. Mar. 22, 2019). With these concepts in mind the Court turns to the parties' arguments.

## II. Analysis

### A. Due Process

Plaintiff argues that his right to procedural due process was violated when he was prevented from challenging the OIG's allegation of fraud related to Dr. Huffnagle's medical reports. That allegation of fraud automatically resulted in the exclusion of all records from Dr. Huffnagle. Without those records, the ALJ determined that Plaintiff was not disabled. Plaintiff argues he should have had the opportunity to prove that Dr. Huffnagle's records were not fraudulent as they related to him. By preventing him from challenging the OIG's factual assertion of fraud, Plaintiff asserts he was deprived of the absolute right to a meaningful hearing,

---

[1] Cases have also been brought in the District of South Carolina, Middle District of Florida, the Southern District of West Virginia, and the Western District of Virginia. *See, e.g.*, *Kirk v. Berryhill*, No. 0:17-cv-2189-DCC, 2019 U.S. Dist. LEXIS 113509 (D.S.C. July 9, 2019); *Smith v. Comm'r of Soc. Sec.*, No. 6:17-cv-1084-Orl-TBS, 2017 U.S. Dist. LEXIS 186764 (M.D. Fla. Nov. 2, 2017); *Robertson v. Berryhill*, No. 3:16-3846, 2017 U.S. Dist. LEXIS 45108 (S.D. W. Va. Mar. 28, 2017); *Taylor v. Berryhill*, Civil Action No. 1:16cv00044, 2018 U.S. Dist. LEXIS 27387 (W.D. Va. Feb. 21, 2018).

which necessarily must include a fair opportunity to rebut the governments factual assertions before a neutral decisionmaker. Plaintiff's Motion at 10.

This exact issue was addressed by the Sixth Circuit in *Hicks*. The *Hicks* plaintiffs were eleven former Conn clients, who had been subjected to redetermination hearings based on a "reason to believe that fraud or similar fault was involved" in their original hearing. *Hicks*, 909 F.3d at 793–94 (internal quotation marks omitted) (quoting 42 U.S.C. § 405(u)(1)(A)). They lost their benefits after a rehearing in which they were prevented from contesting that fraud had occurred. They each sued in federal court. The individual cases were consolidated on appeal to the Sixth Circuit.

The *Hicks* plaintiffs, like Plaintiff here, argued that procedural due process requires, at a minimum, "a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." *Id.* at 797. The Sixth Circuit agreed. They noted that the Supreme Court has recognized the immutable principle that "where governmental action seriously injures an individual and reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Id.* (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)). Relying on *Green*, the *Hicks* court held that because the SSA's action "'depends on fact findings' that the plaintiffs have not been provided the opportunity to rebut, the government's process is constitutionally inadequate." *Hicks*, 909 F.3d at 798.

The Commissioner in the present case urges this Court to disregard the Sixth Circuit's decision in *Hicks* because the opinion demoted the three-part balancing test set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to "back-up status," which the

Commissioner argues is contrary to Supreme Court and Seventh Circuit law. Defendant's Supplemental Brief at 3.

The court in *Hicks* considered whether the case should be decided using the *Mathews* three-part balancing test. *Hicks*, 909 F.3d at 797. It was persuaded however by the plaintiffs' argument that minimum due process rights cannot be balanced away. *Id.*

This Court agrees with the interpretation of the Sixth Circuit that the *Mathews* test does not apply to cases deciding whether minimum due process rights were violated. The *Mathews* case itself was one that sought to determine whether a pre-deprivation hearing was required before social security benefits could be taken away. *Mathews v. Eldridge*, 424 U.S. 319 (1976). There already existed post-deprivation procedures for challenging the government's actions. Thus, the Court used the balancing test to determine whether additional protections were necessary. *Id.* at 335.

In *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993), the Court explained that the *Mathews* test is reserved for situations when the court is determining whether a pre-deprivation versus a post-deprivation hearing is required. The Court noted that the right to "prior notice and a hearing is central to the Constitution's command of due process." *Id.* The Court further stated:

> We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. Whether the seizure of real property for purposes of civil forfeiture justifies such an exception requires an examination of the competing interests at stake, along with the promptness and adequacy of later proceedings. The three-part inquiry set forth in *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), provides guidance in that regard.

*Id.* (internal quotation marks and citations omitted).

The Seventh Circuit's application of the *Mathews* test is consistent with the Supreme Court's direction in *James Daniel*, 510 U.S. 43. *See Parrett v. Connersville* 737 F.2d 690, 696 (7th Cir. 1984) ("*Mathews v. Eldridge* [ ] merely requires a comparison of the costs and benefits of giving the plaintiff a more elaborate procedure than he actually received."); *Sutton v. Milwaukee*, 672 F.2d 644, 645 (7th Cir. 1982) (describing the *Mathews* test as a "simple cost-benefit test of general applicability for deciding whether due process requires notice and hearing before government may deprive a person of property"). In *Sutton*, the court applied *Mathews* to determine whether, even though post towing procedural protections existed, due process required notice and hearing *before* a car was towed. *Id.*

The case that the Commissioner cites, *Van Harken v. City of Chicago*, 103 F.3d 1346 (7th Cir. 1997), further supports the *Hick*s court's interpretation of the *Mathews* test. *See* Defendant's Supplemental Brief at 4. In *Van Harken*, the court was asked to determine whether a process for adjudicating parking tickets comported with due process. *Van Harken*, 103 F.3d at 1348. The process allowed the adjudicator to decide the violation based on the ticket itself without requiring the issuing police officer to appear and testify. *Id.* at 1350. The court applied the *Mathews* test. *Id.* at 1351. However, like the facts in *Mathews*, *Sutton*, *and Parrott*, the procedure at issue provided the plaintiffs with post-deprivation procedures to contest the ticket. *Id.* at 1350.

In the present case, this Court is not being asked to determine if Plaintiff deserved a more elaborate opportunity to contest the Government's allegations of fraud. Plaintiff had no opportunity to contest the government's factual allegations of fraud, either before the redetermination hearing, during the hearing, or at any time after the hearing. He simply was forced to accept, without any opportunity to rebut, that Dr. Huffnagle's medical reports about him were fraudulent and thus could not be used to support his claim for disability. The right to

rebut the Government's factual assertions (whether pre or post-deprivation) is a basic

requirement of procedural due process. *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (holding

that due process required notice of the government's factual basis and a fair opportunity to rebut

the government's factual assertions before a neutral decisionmaker). The *Mathews* balancing

test cannot be used to balance away this right. *See Hicks*, 909 F. 3d at 797 (holding that "SSA's

procedures violate long-standing principles of procedural due process that predate the *Mathews*

test").

Even under the *Mathews* balancing test, however, the SSA's procedures do not pass due

process scrutiny. The *Mathews* test dictates that the process due in any given instance is

determined by considering three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk
> of an erroneous deprivation of such interest through the procedures used, and the
> probable value, if any, of additional or substitute procedural safe guards; and
> finally, the Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural requirement
> would entail.

*Mathews*, 424 U.S. at 335.

As to the first *Mathews* factor, the Commissioner does not dispute that Plaintiff had a

property interest in continued receipt of his disability benefits. Defendant's Reply at 5.[2] Nor

could they. "The interest of an individual in continued receipt of these benefits is a statutorily

created 'property' interest protected by the Fifth Amendment." *Mathews*, 424 U.S. at 332.

---

[2] The Commissioner concedes that Plaintiff had a property interest and instead focuses on arguing that the
redetermination procedure satisfies due process because Plaintiff was afforded a new hearing where he
could submit additional evidence, had the opportunity to file a new disability application, and even if
benefits were terminated, could seek a waiver of that overpayment. Defendant's Motion to Dismiss at
11–12; Defendant's Reply at 5. For the reasons stated above, this Court finds that these procedures alone
were not enough to rectify the fact that Plaintiff was deprived of the opportunity to rebut the OIG's
assertion of fraud altogether.

The second *Mathews* factor analyzes the risk of an erroneous deprivation of the property interest through the procedures used. The SSA automatically disregarded Dr. Huffnagle's records because the OIG informed it that there was "reason to believe" that fraud was involved regarding those records as they related to Plaintiff's application and 1,787 other claimants identified. Was the OIG correct? Perhaps it was right as to some of the claimants. But if it was wrong about the fraud in Plaintiff's case, then it wrongly excluded Dr. Huffnagle's records. Based upon the redetermination process, which excluded Dr. Huffnagle's records, Plaintiff lost his disability benefits.

But if Plaintiff had had the opportunity to rebut the OIG's assertion of fraud, any errors could have been addressed. Dr. Huffnagle's examination report explained that Plaintiff had low back pain and pain radiating into his left leg. R. 597. It also stated that this pain began when Plaintiff fell two years prior, landing on his left hip and jarring his back. R. 598. Dr. Huffnagle recounted that Plaintiff had little medical care for these symptoms because he could not afford it, and he had no medical card. R. 598–99. Dr. Huffnagle's review of symptoms revealed that Plaintiff had positive joint pain and swelling in both his low back and left leg. R. 599. On physical examination, Dr. Huffnagle found Plaintiff's lumbar back flexion and extension were limited as was his lateral bending. R. 600. He concluded that Plaintiff had sciatica of the left leg and low back strain/sprain. R. 600. As a result of his findings, Dr. Huffnagle prepared a functional capacity form that limited Plaintiff to only occasionally lifting 10 pounds, limiting his standing/walking to one hour per 8-hour day, and limiting his sitting to 30 minutes without interruption and a total of 5 hours in an 8-hour day. R. 602–03. Plaintiff could never climb or crawl, and could only occasionally balance, crouch, or kneel. R. 603.

During the redetermination, without Dr. Huffnagle's records, the ALJ determined that there was no evidence in the record that Plaintiff's back pain or hip pain significantly limited Plaintiff's ability to perform work activities.  R. 34.  Had Plaintiff been given the opportunity to rebut the allegation of fraud, he may have been able to convince the ALJ that Dr. Huffnagle had in fact examined him by testifying to the length of the examination and that the examination was consistent with the symptoms he exhibited and the history he relayed at the time of the examination.  He may have been able to support the reliability of those records by providing details of his fall history that were consistent with Dr. Huffnagle's records.

The Commissioner argues the risk of error is low because Plaintiff was given the opportunity to submit new proof at the redetermination hearing and Dr. Huffnagle's reports would be of little value as they are a low-rated factor in the ALJ's analysis.  Defendant's Motion to Dismiss at 13–14; Defendant's Response at 8–9.  The court in *Hicks* rejected these arguments holding that Supreme Court precedent, including precedent applying *Mathews*, "indicates that any time a citizen is deprived of notice of the factual basis for a governmental determination and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker, the risk of error is too high."  *Hicks*, 909 F.3d at 800 (internal quotation marks omitted) (citing *Hamdi*, 542 U.S. at 533).

As to the argument that new information can be provided at the redetermination hearing, the Sixth Circuit rejected this noting that it is difficult to obtain new evidence of past disability.  *Hicks*, 909 F.3d at 802.  This Court agrees that providing evidence in 2016 regarding an alleged disability in 2007 is often difficult.  Here, Plaintiff has provided evidence that he had received care for his spine and hip pain at Shelby Valley Clinic during the relevant time period, but when he sought records from them in 2015 for the redetermination hearing, they could produce only

one record about an unrelated problem. R. 404. Plaintiff was not able to obtain the records that

he had provided to Dr. Huffnagle (who has since died). Plaintiff's Motion at 10. Moreover,

Plaintiff had moved to Illinois several years ago and lost touch with his previous physicians,

which made their ability to recall his treatment from over eight years ago unlikely. Thus, a

major piece of evidence that substantiated Plaintiff's allegation of disability beginning in 2007

were the records from Dr. Huffnagle.

With regard to the Commissioner's argument that Dr. Huffnagle's report was

insignificant because it was not entitled to controlling weight, the Sixth Circuit also rejected that

argument. Defendant's Response at 8–9. "Even if the excluded reports would generally not

override contrary evidence from treating physicians, *see* 20 C.F.R. § 404.1527(c)(2), they could

nevertheless corroborate other evidence in the file and potentially tip the scales toward a

favorable determination." *Hicks*, 909 F.3d at 802. In the present case, there were no treating

physician records in Plaintiff's file relating to his back and hip pain. However, there were other

consultative examinations that arguably would be on the same footing as Dr. Huffnagle's

examination. As such, exclusion of Dr. Huffnagle's records tipped the scales in favor of the SSA

here.

With regard to the final *Mathew's* factor, the Commissioner argues that:

If all 1,800 individuals whose entitlement had to be redetermined were granted mini-trials on whether there was a reason to believe that fraud was involved in their individual cases, the costs would be high, overpayments would mount, the criminal proceedings could be jeopardized, the chance of disparate results would be significant, and the agency's strong interest in complying with its statutory mandate to conduct redeterminations "immediately" would be undermined.

Defendant's Motion to Dismiss at 15.

The *Hicks* court rejected this claim stating:

> These arguments are not compelling. We are particularly unpersuaded by the SSA's timing claims, given that the SSA waited nearly ten years after first learning about possible misconduct involving Conn and Daugherty to initiate redetermination proceedings. It seems disingenuous now to claim that plaintiffs should receive fewer procedural protections because the SSA is statutorily obligated to move quickly.

*Hicks*, 909 F.3d at 803.

The Commissioner argues, without explanation, that allowing beneficiaries to contest the fraud allegation would allow overpayments to mount and increase costs. Defendant's Motion to Dismiss at 15. However, under the status quo, the SSA allows for a redetermination hearing, albeit without allowing Plaintiff the opportunity to contest the fraud allegation. There is no explanation how adding this one element to the redetermination process would add significant delay such that overpayments would mount or how or to what extent costs would be increased. By making the presumption of fraud rebuttable, the redetermination hearing would involve simply allowing Plaintiff to present evidence as to why Dr. Huffnagle's records were accurate as they applied to him and as such would not add significant time or cost to the redetermination hearing. Other procedures could also be used to afford Plaintiff due process. *See Hicks*, 909 F.3d at 803 ("Nor do we believe that forcing OIG investigators to testify in over 1,500 redetermination hearings would be particularly onerous given that SSA investigators would have to do the same thing if they developed a reason to believe fraud existed in 1,500 applications for benefits . . . If anything, the burden might be greater on the SSA investigators, as it is more likely that whatever fraud they uncover involves a single beneficiary . . . and therefore they would benefit from the economies of scale that might exist in redeterminations spawned from OIG investigations.") (internal quotation marks omitted).

Regarding the claim that providing Plaintiff an opportunity to contest the allegation of fraud would somehow jeopardize criminal proceedings, the Commissioner does not explain what

proceedings would be jeopardized. To the extent the Commissioner is referring to jeopardizing the criminal prosecution of a person involved in a suspected fraud, Congress has already provided a remedy to the SSA in such situations. *See* 42 U.S.C. § 405(u)(1)(A) (stating that the Commissioner shall redetermine benefits unless a prosecutor "certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud").

The application of the *Mathews* factors to this case favor Plaintiff. Refusing to allow Plaintiff to rebut the OIG's assertion of fraud as to his individual application violates the Due Process Clause of the Fifth Amendment. Accordingly, Plaintiff's Motion for Summary Judgment as to Count I of his Complaint is granted, and the Commissioner's Motion to Dismiss Count I is denied.

## B. Administrative Procedures Act

Plaintiff's Complaint alleges that the SSA violated the APA in three ways: 1) failing to comply with the requirements for formal adjudications (Count II); 2) violating section 554(d) (Count IV); and 3) acting in an arbitrary and capricious manner by allowing claimants whose benefit determinations are suspected of fraud by the SSA to rebut assertions of fraud, but denying the same procedural protections to claimants whose benefit determinations are suspected of fraud by the OIG (Count VII). The Commissioner moved to dismiss all three counts alleging violations of the APA. Plaintiff moved for summary judgment only on Counts II and VII and did not respond to Defendant's Motion to Dismiss Count IV.[3]

---

[3] In Count IV of the Complaint, Plaintiff alleged that the SSA violated the APA's requirement at 5 U.S.C. § 554(d). Complaint at 4. The Commissioner moved to dismiss this count, and Plaintiff did not reply. In failing to respond to the SSA's motion to dismiss this count, Plaintiff has forfeited any argument

Plaintiff first argues that his redetermination hearing was a formal adjudication under the APA, and that the SSA's use of "extrarecord allegations of fraud" and refusal to allow Plaintiff to rebut such evidence violated the APA. Complaint at 4; Plaintiff's Motion at 24; *see* 5 U.S.C. § 556(d)-(e). The Commissioner disagrees, arguing that the APA's formal adjudication requirements apply only to adjudications "required by statute to be determined on the record after opportunity for an agency hearing." Defendant's Motion to Dismiss at 16 (quoting 5 U.S.C. § 554(a)). The Commissioner points out that the redetermination process under sections 405(u) and 1383(e)(7) do not require a hearing, and therefore, the APA's formal adjudication requirements do not apply. Defendant's Motion to Dismiss at 16–17; *see* 42 U.S.C. §§ 405(u), 1383(e)(7). The Commissioner further argues that even if the APA's formal adjudication requirements did apply, the redetermination decision does not rest on any facts not in evidence, noting that the *Hicks* court conflated the OIG's suspicion of fraud with the SSA's determination of disability. Defendant's Supplemental Brief at 5.

The Commissioner relies on *Carter v. Colvin*, 220 F. Supp. 3d 789, 810 (E.D. Ky. 2016) *aff'd in part, rev'd in part and remanded sub nom. Hicks*, 909 F.3d 786, to argue that the APA's formal adjudication requirements do not apply to Plaintiff's redetermination. In *Carter*, the court found that the statue governing redeterminations did not require adjudication "on the record after opportunity for an agency hearing" as laid out in the APA. *Id.* Accordingly, the court found that because the redetermination statute did not require a hearing, the APA requirements for formal adjudications did not apply. *Id.*

---

regarding same. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in forfeiture). Therefore, the Commissioner's Motion to Dismiss Count IV is granted.

The *Hicks* court reversed *Carter*, finding that the redetermination process violated the APA's formal adjudication requirements. *Hicks*, 909 F. 3d at 805–07. Nevertheless, this Court finds *Hicks* distinguishable on this point. In *Hicks*, the parties agreed that redetermination proceedings were governed by 42 U.S.C. § 405(b)(1) and that proceedings under section 405(b)(1) were subject to the APA's formal adjudication requirements. *Id.* at 804.

In this case, the Commissioner specifically argues that the APA's formal adjudication requirements do not apply to redetermination proceedings.[4] Plaintiff does not respond to the Commissioner's argument that the APA does not apply. Plaintiff's entire argument consists of the following sentence: "As a threshold matter, plaintiff's oral redetermination hearing should be considered a required formal adjudication under the APA. *Cf. Califano v. Yamasaki*, 442 U.S. 682, 697 (1979) (holding that SSA must provide oral hearing before determining whether claimant was at fault for overpayment)." Plaintiff's Motion at 25.

The Court finds that Plaintiff's perfunctory argument is deemed forfeited. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Even if a single parenthetical citation were enough to support such an important argument, it is not in this case. The case Plaintiff cites, *Yamasaki*, 442 U.S. 682, does not support Plaintiff's position that the APA applies here. In *Yamasaki*, the Court determined that a prerecoupment hearing was required for determinations made under 42 U.S.C § 404(b) relating to waivers for overpayments.

_____

[4] Plaintiff does not clearly argue that his redetermination hearing under 42 U.S.C. § 405(u) was a proceeding under 42 U.S.C. § 405(b)(1). His only argument connecting these two sections is that the inability to rebut the allegations of fraud violated "the requirements on formal adjudication at 5 U.S.C. § 556(d)-(e) as well as the Social Security Act's requirements at 42 U.S.C. § 405(b)." Plaintiff's Motion at 24–25. Unlike the parties in *Hicks*, Plaintiff instead seems to argue that the APA's formal adjudication requirements apply directly to section 405(u) and argues a separate violation under section 405(b)(1), which this Court addresses below. *See* Plaintiff's Motion at 24-26.

442 U.S. at 696–97.  The Court makes no mention of the formal adjudication requirements under the APA or redetermination hearings generally.  *See Yamasaki*, 442 U.S. 682.  Accordingly, nothing in this case refutes the Commissioner's argument that 42 U.S.C. § 405(u) does not require a hearing, let alone a hearing "on the record," for the APA's formal adjudication requirements to apply.  Because Plaintiff's argument is deemed forfeited, the Court finds in favor of the Commissioner on Count II.

Plaintiff next argues that that the SSA has violated the APA's prohibition on arbitrary and capricious decision making set out in 5 U.S.C. § 706(2)(A),[5] by establishing one procedure for redeterminations that are undertaken initially by the SSA's Office of Adjudication Review ("ODAR") and another for redeterminations that are undertaken when ODAR receives a recommendation from the OIG.  Complaint at 5–6; Plaintiff's Motion at 20–21.  Plaintiff points out that if the ODAR initially undertakes the redetermination:

> an adjudicator can consider a beneficiary's or recipient's objection to the disregarding of certain evidence.  If the adjudicator is satisfied that fraud or similar fault was not involved in providing the evidence, he or she will consider the evidence.  However, if the adjudicator disregards the evidence because a preponderance of the evidence shows that fraud or similar fault was involved in providing the evidence, he or she will address the beneficiary's or recipient's objection in his or her decision.

Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX")[6] I-1-3-25(C)(4)(a).

In contrast, if the referral comes from the OIG, "adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded."  HALLEX I-1-3-

---

[5] Section 706(2)(A) requires the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

[6] HALLEX "communicates guiding principles and procedures to hearing level and Appeals Council adjudicators" and "serves as a reference source for staff."  HALLEX I-1-0-3.

25(C)(4)(a).  Plaintiff argues there is no logical basis supporting such distinction.  Plaintiff's Motion at 21.

In *Hicks*, the plaintiffs made the same argument: that the two divergent approaches to fraud redeterminations was arbitrary and capricious.  *Hicks*, 909 F.3d at 806.  The Sixth Circuit found that the SSA gave no explanation for treating OIG-based determinations of fraud differently than SSA-based determinations of fraud in HALLEX.  *See id.* at 808 ("[A]n agency's actions must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 50 (1983)).

In this case, the Commissioner similarly does not direct this Court to any justification made by the SSA for these two divergent approaches.  "A long line of precedent has established that an agency action is considered arbitrary when the agency has offered insufficient reasons for treating similar situations differently."  *Yetman v. Garvey*, 261 F.3d 664, 669 (7th Cir. 2001) (citing *State Farm*, 463 U.S. at 57).

The Commissioner attempts to offer a post hoc rationalization.  Citing to the *Hicks* dissent the Commissioner argues that "the agency has a reasoned 'non-arbitrary justification for treating referrals from [OIG] differently than fraud determinations made by non-investigatory, in house personnel—namely the distinct roles and competencies' of OIG professional investigators as compared to agency staff."  Defendant's Supplemental Brief at 5 (citing *Hicks*, 909 F.3d 825–27 (Rogers, J., dissenting)).  However, the SSA did not offer this or any other reason for treating OIG-based determinations of fraud differently than SSA-based determinations of fraud in HALLEX.

In *Hicks*, the SSA also attempted to rationalize the distinctions after the fact by arguing that the two different approaches are necessary to prevent undue burden, prevent the risk of interference with the fraud investigation and resulting criminal prosecution, and prevent ALJs from being in the untenable position of reviewing the sufficiency of law enforcement efforts. *Hicks*, 909 F.3d at 807–08. *Hick*s noted that any attempt to justify such a distinction cannot be based on "appellate counsel's post hoc rationalization[s]." *Hicks*, 909 F.3d at 808 (citation omitted). Nevertheless, *Hicks* found that even considering the SSA's improper post-hoc explanations, those arguments were insufficient.

> All of the SSA's rationales for distinguishing between claimants whose files were deemed fraudulent by the OIG and claimants whose files were deemed fraudulent by SSA turn on differences between the OIG and the SSA—not between the claimants. The SSA has not provided any citations to suggest agencies can distinguish between similarly situated claimants based on circumstances entirely outside their control, and there is good reason to believe such action violates the APA.

*Id.* The court went on to state:

> plaintiffs are not accused of willingly participating in Conn's scheme, such that they could perhaps be deemed responsible for the procedural consequences of triggering an OIG investigation. Instead, they had the misfortune of hiring an attorney whose misconduct was widespread enough to warrant an OIG, as opposed to an SSA, investigation. Procedurally penalizing plaintiffs on this basis is arbitrary and capricious.

*Id.* at 809.

Like the post hoc rationalizations in *Hicks*, the after the fact rationalization the Commissioner offers here, focuses on the differences between the OIG and the SSA, not the difference between the claimants. This Court agrees with the *Hicks* court that distinguishing between similarly situated claimants based on circumstances entirely outside their control violates the APA.

The Commissioner alternatively argues that he could not have acted arbitrarily or capriciously in redetermining Plaintiff's case because he had no discretion under 42 U.S.C. § 405(u). Defendant's Motion to Dismiss at 21 ("The statute is clear—Plaintiff's benefits 'shall' be redetermined."). This does not address Plaintiff's point that under 42 U.S.C. § 405(u), which offers no distinction between OIG and SSA-based fraud determinations, the SSA has outlined different procedures for fraud determinations in HALLEX without any explanation. *See Rupcich v. United Food & Commercial Workers Int'l Union*, 833 F.3d 847, 856 (7th Cir. 2016) ("Treating similar situations differently without adequate explanation is the very embodiment of arbitrary conduct.").

Finally, the Commissioner argues that 42 U.S.C. § 1320a-8(l) does not direct the OIG to notify both the Commissioner and the individual of its "reason to believe," and as such Congress did not provide the individual with an independent procedural process by which to challenge OIG's "reason to believe," where it did so with respect to the Commissioner's findings under 42 U.S.C. § 405(b)(1). Defendant's Motion to Dismiss at 22–23; Defendant's Reply at 13–14. Again, this argument does not address the issue at hand. Nothing in 42 U.S.C. § 405(u) explains why the SSA, through its HALLEX guidance, has devised different procedures for addressing fraud allegations depending on which agency discovers the fraud. The absence of explanation renders these procedures arbitrary and capricious. *See Yetman*, 261 F.3d at 669. For the reasons stated above, the Commissioner's Motion to Dismiss is granted as to Counts II and IV and denied as to Count VII. Plaintiff's Motion for Summary Judgment is denied as to Count II and granted as to Count VII.[7]

---

[7] Plaintiff's Motion for Summary Judgment is granted only to the extent that this Court is reversing the Commissioner's redetermination decision and remanding the case for further proceedings. Plaintiff's request that this Court reverse the Commissioner's decision outright without remand is denied.

## C. Social Security Act

Plaintiff alleges that the SSA violated the Social Security Act in three ways. First, as related to Count VI, he argues that the SSA misapplied the section of the Act relating to redeterminations. Complaint at 5;[8] Plaintiff's Motion at 14; *see* 42 U.S.C. §§ 405(u), 1383(e)(7). Plaintiff argues that Congress did not intend to create a new procedure in enacting sections 405(u) and 1383(e)(7), but rather meant to use already existing procedures such as the reopening regulations or civil penalties. Plaintiff's Motion at 17–19. Plaintiff looks to legislative history and offers a convoluted interpretation of that legislative history to support his argument. Moreover, Plaintiff ignores the Commissioner's argument that sections 405(u) and 1383(e)(7) are clear in their requirement. Defendant's Motion to Dismiss at 20. Sections 405(u)(1)(A) and 1383(e)(7)(A)(i) direct the SSA to redetermine entitlement to benefits whenever "there is reason to believe that fraud . . . was involved in the application of the individual for such benefits." 42 U.S.C. §§ 405(u)(1)(A), 1383(e)(7)(A)(i). As the *Hicks* court held: "On its face, then, § 405(u) requires the SSA to redetermine benefits based on something less than proof of fraud." *Hicks*, 909 F.3d at 809. The Seventh Circuit has directed that a resort to legislative history is only justified when the face of the legislation is "inescapably ambiguous." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1052 (7th Cir. 2013). "The 'inescapably' language means that a court must begin with the presumption that Congress meant exactly what it said." *Id.* at 1052–53 (citing *United States v. LaBonte*, 520 U.S. 751, 757 (1997)). This Court agrees that the regulation is unambiguous and as such Seventh Circuit precedent prevents resort to legislative history.

---

[8] In Count VI, Plaintiff specifically alleges that the SSA violated the reopening requirements of 20 C.F.R. § 404.988 (stating that a decision may be reopened within four years of the date of notice of the initial determination if good cause is found).

Moreover, the SSA has issued a Social Security Ruling explaining that "[f]raud and similar fault determinations under [42 U.S.C. § 405(u)]…are distinct from reopenings as described in 20 CFR 404.987-404.996 and 20 CFR 416.1487-416.1494." *Hicks*, 909 F.3d at 809 (citing Social Security Ruling 16-1p, 2016 SSR LEXIS 2). The *Hicks* court relied on Sixth Circuit precedent, stating that Social Security Rulings are entitled to *Auer* deference. *Id.* at 810 (citing *Wilson v. Comm'r of Soc Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) (holding that a Social Security Ruling, as "an agency's interpretation of its own regulation[,] is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation")). The Seventh Circuit has ruled similarly that where the Agency's policy statement interprets an Agency's own regulations, *Auer* deference is appropriate. *Liskowitz v. Astrue*, 559 F.3d 736, 744 n.8 (7th Cir. 2009). As such, this Court rules that the procedures governing reopenings do not govern redeterminations.

Second, in Count V of his Complaint, Plaintiff argues the SSA failed to "immediately redetermine" Plaintiff's entitlement to benefits after finding that there was reason to believe that fraud was involved in the determination of his benefits. 42 U.S.C. §§ 405(u)(1)(A), 1383(e)(7)(A)(i). The Commissioner agrees that the SSA did not act immediately but notes that the statute contemplates that the agency delay taking adverse action if it would jeopardize the criminal prosecution of a person involved in the suspected fraud. Defendant's Motion to Dismiss at 18. A similar argument was rejected in *Hicks*. *See Hicks*, 909 F.3d at 811. The *Hicks* court stated that if the SSA believed that they could not move forward until the OIG and criminal law-enforcement agents completed their investigations, it was required to obtain a certification in writing from a state or federal prosecutor involved in the investigation. *Id.* (citing

42 U.S.C. § 405(u)(1)(A)).  The SSA failed to do so, and therefore, could not rely on any actual or perceived jeopardy to criminal prosecution of persons involved in the suspected fraud.  *Id.*

The *Hicks* court went on to rule, however, that even though the SSA did not act immediately it prevailed on this claim because the statute does not specify the consequences of such failure.  *Id.* at 811–12.  The court cited to Supreme Court precedent holding that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanctions."  *Id.* at 812 (citing *James Daniel*, 510 U.S. at 63).  This Court agrees with that reasoning and finds for the Commissioner on Count V.

Lastly, in Count III of his Complaint, Plaintiff argues that the SSA also violated the Social Security Act's requirement for hearings under 42 U.S.C. § 405(b)(1) by failing to make findings of fact and issue a decision regarding the fraud determination at Plaintiff's redetermination hearing.  Complaint at 4; *see also* Plaintiff's Motion at 24–26.  The Commissioner argues that 42 U.S.C. § 405(b)(1) does not apply to Plaintiff's redetermination because it was a decision initiated by the OIG, not the Commissioner.  Defendant's Motion to Dismiss at 12–13; Defendant's Reply at 14 (citing *Robertson*, 2017 U.S. Dist. LEXIS 45108, at *34–37 ("The plain text of § 405(b) requires a hearing on decisions made by the Commissioner, and the Court will not extend this requirement to decisions made by the OIG outside of the SSA's authority.")).  Plaintiff does not respond to this argument.  Instead, Plaintiff argues there was a violation under section 405(b)(1) without ever establishing that redetermination hearings under section 405(u) are governed by section 405(b)(1).  *See* Plaintiff's Motion at 26.[9]  For

---

[9] In a footnote, Plaintiff states that anytime the Commissioner seeks to reconsider a claimant's ongoing entitlement to benefits a hearing is required pursuant to 42 U.S.C. § 405(b)(2).  Plaintiff's Motion at 26 n.11.  However, this section makes no reference to redetermination hearings.  *Cf. Hicks*, 909 F.3d at 804 n.4 ("The dissent also maintains that redeterminations under § 405(u) are not governed by § 405(b)(1).

similar reasons addressed above relating to the application of the APA's formal adjudication requirements, this Court finds Plaintiff's argument regarding section 405(b)(1) forfeited. *See Crespo*, 824 F.3d at 674. Accordingly, the Court finds in favor of the Commissioner on Count III.

For the reasons stated above, the Commissioner's Motion to Dismiss Counts III, V and VI is granted, and Plaintiff's Motion for Summary Judgment as to Counts III, V and VI is denied.

### D. Substantial Evidence

In addition to the procedural arguments addressed above, Plaintiff also moved for summary judgment on his substantial evidence claim. Plaintiff argues that the ALJ's decision at the redetermination hearing was not supported by substantial evidence because: (1) the ALJ improperly found no severe physical impairments; and (2) the mental RFC failed to account for the restrictions outlined in the medical opinions. Based on the evidence that the ALJ was permitted to consider at the hearing, this Court finds that substantial evidence supported the ALJ's redetermination decision.

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399–401 (1971). Accordingly, the reviewing court cannot displace the

---

Dissent at 47–48. The SSA has not advanced this argument. Rather, it maintains that 'the redetermination process as implemented by SSA [ ] provides the protections guaranteed by § 405(b)(1).' *See* SSA Reply Br. at 36–37. Because the SSA has not made the argument presented by the dissent, we do not entertain it.").

decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

On April 4, 2016, Plaintiff testified at a hearing before an ALJ. The ALJ also heard testimony from a vocational expert. On July 7, 2016, the ALJ issued his redetermination decision for the period between January 14, 2009, Plaintiff's established onset date, and June 1, 2010, the date of ALJ Daugherty's decision to award benefits. R. 30–41. The ALJ found that Plaintiff had the following severe impairments: affective disorder, anxiety disorder, and history of polysubstance abuse. R. 34.

The ALJ determined that there was no evidence to support Plaintiff's back pain, neck pain, hip pain, headaches, or reactive airway disease. R. 34. The ALJ cited to the lack of treatment during the period at issue, along with minimal limitations found at a consultative examination on January 14, 2010. R. 34; R. 560–65. He further cited an x-ray from January 19, 2010, which stated there was no evidence of fracture, dislocation or other pathological bone or joint change in Plaintiff's left hip. R. 566. The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertion levels, except that he could only occasionally interact with the public and coworkers. R. 35–36.

Plaintiff first argues that the ALJ improperly found that he had no severe physical impairments. Plaintiff cites to his hip pain originating from a fall in 2007 with pain continuing through 2010. He also points to his report of neck and back pain since 2000 that became worse after his fall in 2007. Plaintiff argues that these reports and his examination from January 14, 2010, "supported that plaintiff's degenerative discs of his back and neck and left hip dysfunction were impairments at step 2 of the sequential evaluation." Plaintiff's Motion at 4. Nevertheless, "[s]tep two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be

severe, error at that step is harmless." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019). Here, because the ALJ found that Plaintiff had severe mental impairments, the ALJ's failure to find any severe physical impairments would be harmless.

Plaintiff further points out that the consultative examiner "found that plaintiff did have physical impairment," but he admits that this examiner did not give "precise limitations." Plaintiff's Motion 4, 12. Plaintiff makes no argument as to what physical limitations were not accounted for in the RFC. Accordingly, Plaintiff has not explained how this evidence would have changed the ALJ's disability determination. Additionally, Plaintiff faults the ALJ's evaluation of the state agency doctors' opinions by arguing that the ALJ should "avoid commenting on the meaning of medical terms without the support of expert testimony." Plaintiff's Motion at 12. It is unclear what medical terms would require an expert's evaluation. Nonetheless, the argument is underdeveloped and unsupported, and the argument is deemed forfeited. *See Baker v. Colvin*, 2015 U.S. Dist. LEXIS 19386, *10–11 (N.D. Ill. Feb. 18, 2015) (finding undeveloped arguments forfeited where plaintiff "makes only passing references to Listing 11.03 and the ALJ's step-two and credibility analyses without providing any substantive support for his assertions").

Plaintiff next argues that the mental RFC, which limited Plaintiff only as to his interactions with the public and coworkers, failed to account for additional restrictions outlined in the medical opinions. The Commissioner responds that even if the additional limitations Plaintiff identified were included in the RFC, Plaintiff would still be able to perform the machine tender position identified by the ALJ. Defendant's Response at 12. Plaintiff does not dispute this contention. Instead, Plaintiff cites to the Programs Operations Manual ("POMS") provision 25025.030, which states that an ALJ should cite three occupations that are examples of work the

claimant can perform.  Plaintiff's Reply at 5.  However, "[t]he POMS manual has no legal force and therefore the standard cannot be controlling in this case." *Parker v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989).  Even if the manual were a controlling regulation, provision 25025.030 further states that an ALJ "may cite fewer than three occupations when it is clear that jobs exist in significant numbers."  POMS 25025.030.  The vocational expert testified that the machine tender job had 100,000 jobs available nationally.  R. 105; *see Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("As few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number.") (citation omitted).  Accordingly, Plaintiff's argument has no merit.

Therefore, Plaintiff's Motion for Summary Judgment on the substantial evidence claim is denied, and the Commissioner's Motion is granted.  Although the Court finds that substantial evidence supports the ALJ's decision on redetermination, remand is still required for the reasons stated above.  On remand, Plaintiff must be given the opportunity to challenge the basis for the Commissioner's decision to exclude Dr. Huffnagle's reports.

### E. Reinstatement of Benefits

In both of Plaintiff's motions for summary judgment, he requests that his disability benefits be reinstated.  Plaintiff provides little support for his request for reinstatement of benefits, but it appears that he is asking for permanent reinstatement of benefits, not temporary reinstatement pending the decision on remand.

The Commissioner does not devote any of his briefing to this topic.  Nevertheless, in light of this Court's finding that the redetermination proceeding violated the Due Process Clause of the Fifth Amendment and the APA, Plaintiff's benefits should be reinstated pending the Commissioner's decision on remand.

This Court found that Plaintiff's redetermination proceeding violated his procedural due process rights because his benefits were terminated without allowing him the opportunity to dispute the alleged fraud in Dr. Huffnagle's reports. "It would be illogical to grant summary judgment for the plaintiffs based on a procedural due process violation but then allow the government to continue to deprive the plaintiffs of a protected property interest while the plaintiffs await the due process to which they are legally entitled." *In re Various Soc. Sec. Cases Affected by Sixth Circuit Decision in Hicks v. Berryhill*, No. 17-5206, No. 0:16-CV-062-JMH, 2019 WL 3034699, at *4 (E.D. Ky. July 11, 2019). The SSA may not deprive Plaintiff of his disability benefits without first providing him with due process.

By reinstating Plaintiff's benefits, the Court is not opining on Plaintiff's entitlement to disability benefits for the period in question. It is only reinstating benefits until the Commissioner provides Plaintiff with a meaningful hearing and the due process he is entitled to under the Constitution.

### III. Conclusion

For the reasons listed in this opinion, the Commissioner's Motion to Dismiss [10] is granted in part and denied in part. The Motion [10] is granted as to Counts II, III, IV, V, and VI and denied as to Counts I and VII. Plaintiff's Motion for Summary Judgment [24] is granted in part and denied in part. The Motion [24] is granted as to Counts I and VII and denied as to Counts II, III, V, and VI. Furthermore, Plaintiff's Motion is granted only to the extent that this Court is reversing the Commissioner's redetermination decision and remanding the case for further proceedings. Plaintiff's Motion for Summary Judgment on Count VIII [29] is denied, and the Commissioner's Motion on Count VIII [30] is granted. In light of this Court's finding

that the redetermination proceeding violated the Due Process Clause of the Fifth Amendment

and the APA, Plaintiff's benefits are reinstated pending the Commissioner's decision on remand.


Date: August 7, 2019                    By:

                                        Lisa A. Jensen
                                        United States Magistrate Judge